# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2106

CHERYL L. HYMAN,

*Plaintiff-Appellant,*

v.

DICK TATE and HARRY KIRLIN, d/b/a/
TATE & KIRLIN ASSOCIATES,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 242—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED JANUARY 22, 2004—DECIDED APRIL 1, 2004

———————

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Cheryl Hyman sued Dick Tate and Harry Kirlin, doing business as Tate & Kirlin Associates ("T & K"), alleging that the defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") by sending her a collection letter after she had filed for bankruptcy. Following a bench trial, the district court found that even if the defendants had violated the terms of the

FDCPA, they were protected from liability by the bona fide error defense. Hyman appeals. We affirm.

I.

Cheryl Hyman incurred a credit card debt to Cross Country Bank in the amount of $427.61. On January 14, 2000, Hyman filed a Chapter 13 bankruptcy petition, listing the debt owed Cross Country Bank, but incorrectly listing it in the amount of $437.61. On September 7, 2001, Cross Country Bank referred Hyman's debt to T & K for collection.[1] On September 11, 2001, T & K sent Hyman a collection letter for the $427.61 owed Cross Country Bank. The letter advised Hyman that she had the right to dispute the validity of the debt and to request and obtain verification of the debt. At the time T & K sent the letter to Hyman, it did not know that she had filed for bankruptcy. On October 2, 2001, Hyman telephoned T & K and informed an employee that she had filed for bankruptcy. The collector who took the call asked Hyman the case number, the chapter under which she had filed the case, and her attorney's name. T & K quickly closed Hyman's account and did not make any further collection attempts.

Nonetheless, Hyman filed a complaint against T & K, alleging violations of §§ 1692e and 1692f of the FDCPA.[2] 15 U.S.C. §§ 1692(e), (f). T & K asserted the "bona fide error"

---

[1] The Social Security number provided to T & K also differed from the one used in the bankruptcy filing, although it is unclear whether that was due to a mistake by the bank or Hyman.

[2] Hyman also alleged a claim under § 1692c(a)(2), but later withdrew that claim.

defense under § 1692k(c) of the FDCPA. After denying cross-motions for summary judgment, the district court held a bench trial.

At trial, the district court heard testimony that T & K trains its employees in collection procedures and the requirements of the FDCPA, including telling its collectors that once they learn a debtor has filed for bankruptcy, all collection activities must stop. At trial, T & K also explained that although there was no formal agreement with Cross Country Bank, it understood that the bank would not forward accounts for collection where the debtor had filed for bankruptcy. Moreover, T & K's general manager, Gerald Smith, testified that creditors would not refer such accounts for collection because it would not be in their best business interests to do so. Smith further testified that three primary sources provide notice of a bankruptcy filing: the bankruptcy court, a debtor's call or letter, or the creditor-client.

Based on this testimony, the district court concluded that even if T & K's collection letter technically violated the FDCPA because it was sent after her bankruptcy filing, it was a "bona fide error," an affirmative defense under the FDCPA. Accordingly, the district court ruled in favor of the defendants on Hyman's FDCPA claims. Hyman appeals.

II.

Although Hyman sued T & K for violations of §§ 1692e and 1692f of the FDCPA, on appeal Hyman concedes that her § 1692f claim is not viable under this court's ruling in *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir.

2003).[3] However, Hyman claims that the district court erred in rejecting her § 1692e claim.

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In her complaint, and at trial, Hyman maintained that T & K's collection letter for payment of a $427.61 credit card debt violated § 1692e because that claim was barred by her bankruptcy filing. Without definitively deciding that the collection letter was a violation of § 1692e, the district court concluded that, even if it was, T & K was protected from liability by the "bona fide error" defense of § 1692k(c) of the FDCPA. That section provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

On appeal, Hyman does not challenge the district court's finding that the error was "not intentional" and instead "resulted from a bona fide error." Rather, Hyman argues that the district court erred in finding that the defendants had maintained "procedures reasonably adapted" to avoid the erroneous mailing of collection letters to accounts in bankruptcy.

---

[3] In *Turner*, this court held that § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," is not violated where a collector merely mails a letter to a consumer, noting that a debt had been referred to it for collection, even though the debt had previously been discharged in bankruptcy. *Id.* at 997-98.

Following a bench trial, we review the district court's findings of fact for clear error. *Reynolds v. Commissioner of Internal Revenue*, 296 F.3d 607, 612 (7th Cir. 2002). In this case, the district court found that T & K had in place reasonable procedures to avoid such erroneous collection efforts, namely "reliance on its creditor not to refer debtors who are in bankruptcy, and immediate cessation of collection efforts once T & K learns of a bankruptcy filing." Trial evidence supports this finding. Gerard Smith, T & K's General Manager, testified that T & K had an understanding with Cross Country that the bank would not refer accounts for collection if those accounts were in bankruptcy. Smith also testified that upon learning that an account was in bankruptcy, the account is cancelled that day or the next business day at the latest, and that, in this case, Hyman's account was removed from collection within one minute of her call.

Hyman responds by arguing that the district court's finding was clearly erroneous because Smith conceded at trial that he had never specifically discussed the issue of bankruptcy accounts with anyone at Cross Country and because no one at Cross Country told him that they would not send over accounts on which a bankruptcy petition had been filed. But Smith also emphasized the obvious—that no client would send them "bankruptcy accounts because that is just not good business to do that." Additionally, Smith testified that if Cross Country at some point received information that an account previously referred was in bankruptcy, the bank would promptly notify T & K. Because forwarding bankrupt accounts was not only a bad business practice but also because Cross Country would immediately notify T & K if an account in bankruptcy slipped through, the district court could reasonably conclude that the bank would not intentionally forward accounts in bankruptcy in the first instance. Moreover, the defendants presented

evidence that of the accounts referred to it for collection, only .01% of those accounts were later found to have been in bankruptcy. Given this evidence, the district court did not commit clear error in concluding that T & K reasonably relied on Cross Country not to forward accounts in bank-ruptcy.

Hyman next argues that T & K could not merely rely on the bank not to forward accounts in bankruptcy. Instead, Hyman asserts that prior to mailing collection letters, T & K had to establish its own proactive procedure (such as checking the bankruptcy records or using the on-line service of "Banko") to assure that the accounts forwarded for collection were not in bankruptcy. However, the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the "bona fide error" defense. *See* 15 U.S.C. § 1692k(c). *Cf. Jenkins v. Heintz*, 124 F.3d 824, 834-35 (7th Cir. 1997) (collector qualified for "bona fide error" defense where it had in place procedures to prevent violations of the FDCPA, and the collector was not required to independently investigate and evaluate the validity of forced placed insurance charges); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (concluding that the "bona fide error" defense does not re-quire a collector to conduct an independent investigation of the debt referred for collection). Therefore, the district court did not commit clear error in finding that T & K had adequate procedures in place, first by relying on Cross Country not to forward accounts in bankruptcy, and then by assuring that any accounts mistakenly referred for collection were promptly removed from the collection list. *See Turner*, 330 F.3d at 996 (the defendant "could also show that it had taken reasonable preventive measures to avoid such mistakes (such as an agreement with its creditor-clients that debts are current and the demand letter was sent soon after the assignment)").

Although T & K could have done more to assure that bankruptcy proceedings had not been initiated, § 1692k(c) only requires collectors to adopt reasonable procedures, and as the district court found, it would not be reasonable to require T & K to independently confirm that the accounts forwarded by the bank were not in bankruptcy, where the bank, in the first instance, limited the accounts forwarded to those not in bankruptcy. Mistakes can occasionally happen, but, as the district court further found, it would cost T & K about $1.5 million per year to request a credit report on every account referred to it for collection. As it is, even without such an expensive review system, only .01% of all accounts referred are later learned to be in bankruptcy. Moreover, any potential harm to the debtors is slight, given that T & K also has procedures in place to assure that accounts in bankruptcy are promptly removed from their collection lists. Under these circumstances, the district court did not commit clear error in concluding that T & K was not required to independently research each account for bankruptcy filings before sending collection letters. Accordingly, the district court's further findings that T & K instituted reasonable procedures to avoid such errors, and that T & K were entitled to the "bona fide error" defense, were not clearly erroneous.

### III.

Hyman should not have received a collection letter from T & K because she had filed for bankruptcy. However, rather than violating the FDCPA, T & K's conduct in this case illustrates the proper functioning of the FDCPA: The collection letter provided Hyman with the information necessary for her to understand her rights and to stop collection activities in the event an unintentional error occurred. All it took from Hyman was a quick telephone call

and T & K immediately rectified the error. Based on these facts, the district court properly found that T & K's mistake was a bona fide error and that the defendants were not liable under the FDCPA. We AFFIRM.


A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
