# In the
# United States Court of Appeals
## For the Seventh Circuit

——————————

No. 03-1594

JEANETTE RANDOLPH,

*Plaintiff-Appellant,*

v.

IMBS, INC.,

*Defendant-Appellee.*

——————————

**Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 6368—Elaine E. Bucklo**, *Judge.*

——————————


Nos. 03-2185 & 03-2340

CHERYL ALEXANDER,

*Plaintiff-Appellee, Cross-Appellant,*

v.

UNLIMITED PROGRESS CORP.,

*Defendant-Appellant, Cross-Appellee.*

——————————

**Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 2063—Sidney I. Schenkier**, *Magistrate Judge.*

——————————

No. 03-3182

JENNIFER J. CROSS,

                                         *Plaintiff-Appellant*,

                    *v.*

RISK MANAGEMENT ALTERNATIVES, INC.,

                                         *Defendant-Appellee*.

————————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 8136—**Elaine E. Bucklo**, *Judge*.

————————

ARGUED FEBRUARY 11, 2004—DECIDED MAY 12, 2004

————————

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*.  A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is "false" in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. §362) or the discharge injunction (11 U.S.C. §524), it is not. A debt collector's false statement is presumptively wrongful under the Fair Debt Collection Practices Act, see 15 U.S.C. §1692e(2)(A), even if the speaker is ignorant of the truth; but a debt collector that exercises care to avoid making false statements has a defense under §1692k(c). Two recent decisions of this circuit arising out of post- bankruptcy demands for immediate payment illustrate how these provisions of the FDCPA work. *Turner v. J.D.V.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003); *Hyman v. Tate*, No. 03-2106 (7th Cir. Apr. 1, 2004).

A debtor dunned after filing for bankruptcy has another potential remedy: ask the bankruptcy judge to hold the other party in contempt of either the automatic stay or the discharge injunction. This option is available against both creditors and debt collectors, but only if the violation is "willful". See §362(h); cf. §524(a)(2). Willfulness entails actual knowledge that a bankruptcy is under way or has ended in a discharge. If a willful violation can be shown, both actual and punitive damages are available, while violations of the FDCPA generally lead to small penalties and never to punitive damages. In these three cases, which we have consolidated on appeal, the district courts held that remedies under the Bankruptcy Code are the *only* recourse against post-bankruptcy debt-collection efforts—that the Code trumps the FDCPA when they deal with the same subject, even when the two statutes are consistent. On this view, negligent attempts to collect from debtors during or after bankruptcy cannot yield liability. That position has the support of one circuit, see *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002), but accepting it would change the outcome of *Turner* and *Hyman*. Although those two decisions did not consider the effect of the Bankruptcy Code on the FDCPA, they did apply the FDCPA to situations fundamentally the same as those of the three cases now before us.

These suits are similar in material respects, so we use one as an illustration. When Cheryl Alexander filed a petition under Chapter 13 of the Bankruptcy Code, she owed $1,125 to her dentist, Joseph V. Kannankeril. She listed this debt on the schedule of unsecured, nonpriority claims. Kannankeril was notified of the filing and the identity of Alexander's lawyer. He filed a timely proof of claim, and the confirmed plan listed this debt as one to be paid in part over time. Payments under a Chapter 13 plan can last for years. About two years after Alexander's plan was confirmed, Dr. Kannankeril died; his office hired Unlimited Progress, Inc.,

to collect old accounts, including Alexander's. We must assume, given the posture of the litigation, that whoever was managing Dr. Kannankeril's estate furnished Unlimited Progress with the bills but not with any of the documents concerning her bankruptcy. Unlimited Progress sent a dunning letter, which Alexander ignored; it followed up with another that she relayed to her attorney. He informed the debt collector about the Chapter 13 proceedings; Unlimited Progress immediately closed its file and has never again contacted Alexander. Suit under the FDCPA followed, and Alexander made two claims: first, that Unlimited Progress had falsely represented that she was required to pay Kannankeril's bill immediately; second, that Unlimited Progress had violated the FDCPA by writing directly to her, even though she was represented by counsel.

The parties consented to decision by a magistrate judge, see 28 U.S.C. §636(c), who concluded that the Bankruptcy Code "preempts" the FDCPA when the act alleged to transgress the FDCPA also violates the Code. See *Alexander v. Unlimited Progress Corp.*, 2003 U.S. Dist. LEXIS 5560 (N.D. Ill. Mar. 21, 2003). Because §362(h) of the Code condemns only willful debt-collection attempts, while the FDCPA uses a strict-liability approach (with a due-care defense), the court deemed them incompatible. The magistrate judge relied principally on *Cox v. Zale*, 239 F.3d 910 (7th Cir. 2001), which holds that the Bankruptcy Code occupies the field, to the exclusion of state common and statute law bearing on debt adjustment after a federal bankruptcy proceeding has been commenced, though he also cited *Kokoszka v. Belford*, 417 U.S. 642 (1974). Sending the letter to the debtor rather than to counsel does not independently violate the Bankruptcy Code, however, and the magistrate judge ordered Unlimited Progress to pay Alexander $1,000 for what he held to be a violation of 15 U.S.C. §1692c(a)(2). In the other two suits the district judge held that the Code supplies the exclusive remedy for any debtor in bankruptcy

and applied this understanding to knock out claims under §1692c(a)(2), §1692e(2)(A), and §1692f (which forbids harassing or unconscionable collection tactics). See *Cross v. Risk Management Alternatives, Inc.*, 296 B.R. 758 (N.D. Ill. 2003); *Randolph v. IMBS, Inc.*, 288 B.R. 524 (N.D. Ill. 2003).

We start with the notice-to-counsel theory, because the difference between §1692c(a)(2) and §1692k(c) may help us understand the relation between the Bankruptcy Code and §1692e(2)(A). Section 1692c(a) says that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address". Unlimited Progress did not know that Alexander was represented by an attorney, any more than it knew that she had a confirmed Chapter 13 plan. The district court thought this irrelevant, because the information must have been in Dr. Kannankeril's files. Yet the statute asks what the debt collector knows, not what the creditor knows.

A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all. Courts do not impute to debt collectors other information that may be in creditors' files— for example, that debt has been paid or was bogus to start with. This is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims. 15 U.S.C. §1692g. Verification would be unnecessary if debt collectors were charged with the creditors' knowledge. The due-care defense of §1692k(c) also would be pointless if creditors' knowledge were imputed to debt collectors. Why inquire whether the debt collector took appropriate precautions to learn something it is bound to know from the outset? Alexander does not cite, and we have not found, any appellate opinion imputing creditors'

knowledge to debt collectors. Knowledge may be imputed to *agents*, but debt collectors are independent contractors; an agent or employee of the creditor is not covered by the Act in the first place. See 15 U.S.C. §1692a(6)(a). So the information in Dr. Kannankeril's files about Alexander's bankruptcy (and the fact that she had counsel) is not "knowledge" from the perspective of Unlimited Progress unless it was furnished to that debt collector, and as Alexander does not contend that this occurred there can be no liability under §1692c(a)(2).

Although §1692c(a)(2), like §362(h) of the Bankruptcy Code, makes liability depend on the actor's knowledge, §1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period. See *Turner*, 330 F.3d at 995, and its predecessors, such as *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000), and *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). In lieu of a scienter requirement, the FDCPA provides a defense "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. §1692k(c). This is the basis of the district court's conclusion that liability under §1692e(2)(A) would interfere with the administration of bankruptcy law— Congress specified a scienter rule for proceedings under §362(h), yet the FDCPA allows liability without proof of a mental state.

The district court wrote that §362(h) "preempts" §1692e(2)(A), but this cannot be right. One federal statute does not preempt another. See *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004). When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other—and repeal by implication is a rare bird indeed. See, e.g., *Branch v. Smith*, 538 U.S. 254, 273 (2003); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*, 534 U.S. 124, 141-44

(2001) (collecting authority). It takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other. Preemption is more readily inferred, so decisions such as *Cox v. Zale*—which held that bankruptcy principles come from federal rather than state law—are not informative about which federal laws apply to what transactions. The district court did not find any clearly expressed decision that the Bankruptcy Code displaces the FDCPA, and the debt collectors do not contend that Congress made such a decision. The argument, rather, is one based on the operational differences between the statutes. These do not, however, add up to irreconcilable conflict; instead the two statutes overlap, and if the plaintiff shows a more serious transgression—the willful violation to which §362(h) refers— then more substantial sanctions (such as punitive damages) are available. It is easy to enforce both statutes, and any debt collector can comply with both simultaneously. A table shows the differences:

|  | Bankruptcy | FDCPA |
|---|---|---|
| **Who** | Anyone | Debt collector only |
| **Scienter** | Willfulness | Strict liability (§1692e(2)(A)) |
| **Defense** | None | Bona fide error plus due care (§1692k(c)), or reliance on FTC opinion (§1692k(e)) |
| **Statutory Damages** | None | $1,000 maximum (§1692k(a)(2)(A)) |
| **Compensatory Damages** | Yes | Yes (§1692k(a)(1)) |
| **Punitive Damages** | Yes | No |
| **Cap on Class Recovery** | No | Yes (§1692k(a)(2)(B)(ii)) |
| **Maximum recovery** | No | Yes, $500,000 or 1% of net worth, whichever is less (§1692k(a)(2)(B)(ii)) |
| **Attorneys' fees to debtor** | No | Yes (§1692k(a)(3)) |
| **Attorneys' fees to creditor** | No | Yes (§1692k(a)(3)) |
| **Statute of limitations** | None (laches defense only) | One year (§1692k(d)) |

The regime under §362 tracks that for other proceedings in the nature of contempt of court. The regime under the FDCPA sets a lower standard of liability and provides lower damages. It also deals specifically, as §362 does not, with matters such as class actions, maximum recovery, attorneys' fees, and the period of limitations. It is not sound to call §362 of the Code "comprehensive"; the FDCPA comes closer to that mark. It would be better to recognize that the statutes overlap, each with coverage that the other lacks—the Code covers all persons, not just debt collectors, and all activities in bankruptcy; the FDCPA covers all activities by debt collectors, not just those affecting debtors in bankruptcy. Overlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both.

*Kokoszka*, the only decision of the Supreme Court relied on by either the ninth circuit or the district court in our three cases, is not pertinent. After holding that a refund of income taxes is property of the bankruptcy estate, 417 U.S. at 645-48, the Court had to decide whether a provision of the Consumer Credit Protection Act specifying that no more than 25% of a debtor's earnings are subject to garnishment enabled the debtor to keep 75% of the refund out of his creditors' hands. The Court held not, for a tax refund is not part of "earnings" even though the taxes had been withheld from the debtor's wages. *Id.* at 648-52. A tax refund is a capital asset, while garnishment deals with apportionment of periodic wage income. This conclusion meant that the two statutes did not conflict. Along the way, the Court suggested that, once bankruptcy begins, the Bankruptcy Act of 1898 (the predecessor to the Bankruptcy Code of 1986) supplies all rules for the disposition of the debtor's current income and assets. That view was not expressed as a holding, but even if it had been it would not affect the FDCPA, which regulates how debt collectors interact with debtors, and not what assets are made available to which

creditors and how much is left for debtors (the principal subjects of the Bankruptcy Code).

Whether overlapping and not entirely congruent remedial systems can coexist is a question with a long history at the Supreme Court, and an established answer: yes. See, e.g., *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999); *General Motors Acceptance Corp. v. United States*, 286 U.S. 49 (1932); *United States Shipping Board Emergency Fleet Corp. v. Rosenberg Brothers & Co.*, 276 U.S. 202 (1928). Cf. *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 124 S. Ct. 872 (2004) (Telecommunications Act of 1996 and Sherman Act of 1890 both apply to communications industry, each statute with distinct standards of conduct and liability). This is so even if the application of one system is jarring against the background of another. That's the lesson of *Heinz v. Jenkins*, 514 U.S. 291 (1995), which applied the FDCPA to lawyers engaged in collecting debts through litigation, despite the many differences between the FDCPA and the rules of procedure that apply to other litigation.

In recent decades questions about the compatibility of overlapping systems have come up most frequently in civil-rights cases, because the provisions enacted in 1866 and 1871, and now codified at 42 U.S.C. §§ 1981 to 1985, differ in details both large and small from more recent statutes, such as the Civil Rights Act of 1964. For example, most claims under the Civil Rights Act of 1964 must be presented first to the EEOC, with litigation only when the agency certifies that conciliation has failed, while claims under §1981 or §1983 may be commenced in court without administrative exhaustion. The period of limitations for filing a charge under the 1964 Act is 90 to 300 days, shorter than the time (usually derived from state law via 42 U.S.C. §1988) for litigation under §1981 or §1983. See *Wilson v. Garcia*, 471 U.S. 261 (1985). Until the Civil Rights Act of 1991, only equitable remedies (including back pay) were

available for violations of the 1964 Act, while compensatory and punitive damages were available for violations of the older laws. These differences—and there are many more—led to contentions that the 1964 Act superceded the older statutes to the extent they occupied the same ground. Arguments of that kind have never succeeded, however; the Supreme Court has held that both old and new remedial systems may be enforced according to their terms, despite the substantial differences, because the standards for implied repeal have not been satisfied. See *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975) (Title VII and §1981); *Runyon v. McCrary*, 427 U.S. 160 (1976) (Title II and §1981); *Guardians Association v. Civil Service Commission*, 463 U.S. 582 (1983) (Title VI and §1983); *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) (Title VII and §1981; declining to overrule earlier decisions). The Supreme Court has never discussed the most common overlap—Title VII and §1983 when the employer is a state actor—but like other appellate courts we have held that employees may resort to both statutes despite the substantial differences in their terms. See, e.g., *Trigg v. Ft. Wayne Community Schools*, 766 F.2d 299 (7th Cir. 1985) (collecting authority). See also *Delgado v. Stegall*, No. 03-2700 (7th Cir. May 4, 2004) (Title IX of Educational Amendments of 1972 does not preclude claim under §1983 against teacher in a public school).

The Bankruptcy Code of 1986 does not work an implied repeal of the FDCPA, any more than the latter Act implicitly repeals itself. Consider again Alexander's two claims: the first, under §1692c(a), depended on the debt collector's "knowledge" of the bankruptcy; the second, under §1692e(2)(A), invoked a strict-liability rule with a potential due-care defense. We have been able to address both of these independently, without saying that it would undercut the scienter requirement §1692c(a) to permit no-fault liability under §1692e(2)(A). They are simply different

rules, with different requirements of proof and different remedies. Just so with §1692e(2)(A) and §362(h) of the Bankruptcy Code. To say that only the Code applies is to eliminate all control of negligent falsehoods. Permitting remedies for negligent falsehoods would not contradict any portion of the Bankruptcy Code, which therefore cannot be deemed to have repealed or curtailed §1692e(2)(A) by implication. To the extent that *Walls* holds otherwise, we do not follow it; instead we reaffirm the approach of *Turner* and *Hyman*.

Because the district court dismissed the complaints on the pleadings, it is premature to broach the question whether any of the debt collectors could establish a defense under §1692k(c). To the extent that plaintiffs seek relief under §1692f, which prohibits "unconscionable" collection tactics, there is no incompatibility with the Code (everything we have said about §1692e(2)(A) applies equally to §1692f) but also no serious claim: all three debt collectors desisted immediately on learning about the bankruptcy proceedings. All claims under §1692f are knocked out by the statutory language and our holding in *Turner*, 330 F.3d at 997-98. To the extent that plaintiffs Cross and Randolph seek relief under §1692c(a)(2) on the theory that the debt collectors (and not just the creditors) knew that they had counsel, again the FDCPA may be enforced, and further proceedings are required to explore the question whether the debt collectors themselves (as opposed to the creditors) knew that the debtors were represented by attorneys. The judgments are vacated and the matters remanded for further proceedings consistent with this opinion. But on Unlimited Progress's appeal from the award under § 1692c(a), the judgment is reversed outright.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*