**Samantha BELL, Individually and on Behalf of All Others Similarly Situated, Plaintiff,**

v.

**BOWMAN, HEINTZ, BOSCIA & VICIAN, P.C., An Indiana Professional Corporation, Defendant.**

**No. 1:IP 02–0373–C–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 6, 2005.

*ENTRY DENYING PLAINTIFF AND
DEFENDANT'S CROSS–MOTIONS
FOR SUMMARY JUDGMENT* [1]

BARKER, District Judge.

This matter comes before the Court on Plaintiff's and Defendant's cross-motions for summary judgment on Plaintiff's claims of violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

---

**1.** We also *DENY* Plaintiff's and Defendant's motions to strike. With respect to Plaintiff's Motion to Strike Defendant's Cross–Motion for Summary Judgment, we find that Plaintiff correctly identifies several violations of Local Rule 56.1 by Defendant; however, we decline to strike Defendant's cross-motion and bona fide error defense because Defendant's violations of the Local Rules have not prejudiced Plaintiff. Regarding Defendant's Motion to Strike Plaintiff's Supplemental Brief, its "motion" is actually a responsive brief, which we

§ 1692 *et seq.* Plaintiff, Samantha Bell ("Bell" or the "class representative"), individually and on behalf of 238 other individuals who are allegedly similarly situated (the "other class members"), asserts that Defendant Bowman, Heintz, Boscia & Vician, P.C. ("Bowman Heintz") sent debt collection letters containing an incorrect amount for the debtor's outstanding debt, in violation of § 1692g(a)(1) and § 1692e of the FDCPA. Bowman Heintz responds that it is not liable for the erroneous debt collection letters under the bona fide error exception contained in § 1692k(c) of the FDCPA

As we explain below, because there are material facts in dispute with respect to both parties' claims, we *DENY* Plaintiff and Defendant's cross-motions for summary judgment.

### *Factual Background*

For analytical clarity, we divide the factual background of this litigation into three parts: (A) the collection letters sent to Bell in violation of the FDCPA, (B) the alleged violation of the FDCPA with respect to the other class members, and (C) Bowman Heintz's bona fide error defense.

### A. *The collection letter sent to Bell.*

Bowman Heintz is a debt collector, as defined at § 1692 of the FDCPA. Compl.

and Ans. ¶ 4. Bowman Heintz sent Bell a form debt collection letter ("collection letter" or the "D78 letter" [2]), dated August 3, 2001, demanding payment of a consumer debt she allegedly originally owed to Providian Bank ("Providian"), which debt had by then been assigned to Platinum Financial Services ("Platinum").[3] This collection letter stated, in part, that "as of the date of this letter, you owe $1,876.58." Pl.'s Ex. A.[4] Three months later, Bowman Heintz sued Bell but stated in its form Notice of Claims/Summons ("Notice of Claims"), dated November 9, 2001, that Bell owed "$1,876.58 plus ... 14.9% interest from May 15, 2000, ...." Pl.'s Ex. B.

At the time the original collection letter was sent, Bowman Heintz's records contained a form Affidavit in Support of Judgment from Platinum, dated July 19, 2001, ("Affidavit in Support of Judgment") which stated that Bell owed "$1,876.58 together with interest and other applicable costs."[5] Pl.'s Ex. C. Plaintiff claims that Bowman Heintz's computer account history indicates that when it received Bell's account on July 17, 2001, the amount of her debt was $1,876.58 plus interest at 14.9% from May 15, 2000. *See* Pl.'s Ex. D.

Bowman Heintz never provided Bell with any communication which clarified the

---

expressly prohibited in our order dated March 30, 2005, in that it attacks the sufficiency of the evidence Plaintiff cites in her Supplemental Brief. We take this opportunity to officially note our displeasure with Defendant's thinly-veiled attempt to bypass our prior order. Defendant also objects to Pl.'s Supplemental Ex. A and Supplemental Ex. B as inadmissible hearsay even though both of these exhibits were previously introduced into evidence at the hearing on class certification on October 1, 2004.

2. This is the alpha-numeric code which Bowman Heintz uses to refer to the validation letter.

3. Providian assigned the debt to OSI Funding Corp., which in turn assigned the debt to Platinum.

4. Plaintiff submitted at least two exhibits labeled "Exhibit A" and two exhibits labeled "Exhibit B." We shall refer to the exhibits submitted with Plaintiff's Brief in Supp. of Summ. J. as "Ex. A" and "Ex. B" and the exhibits submitted with Plaintiff's Supplemental Brief as "Supplemental Ex. A" and "Supplemental Ex. B," respectively.

5. The language "together with interest and other applicable costs" was part of the form language contained in the affidavit.

inconsistency between the amount of debt stated in the collection letter and that set forth in the Notice of Claims. Aff. of Samantha Bell at ¶ 7.

After a review of Bowman Heintz's records, Glenn S. Vician ("Vician"), President of Bowman Heintz, claimed that, as of the date the collection letter was sent to Bell, Bowman Heintz did not have any information from its client, Platinum, or the original creditor, Providian, that any accrued interest was owed on Bell's consumer debt. Aff. of Glenn Vician ("Vician Aff.") at ¶ 18.

### B. *The collection letters sent to the other class members.*

After repeated prodding from Plaintiff's counsel and this court, Bowman Heintz produced a list of 239 putative class members who, during the relevant time period, had Providian-originated debt referred to Bowman Heintz through Platinum. Plaintiff argues that Bowman Heintz's computer records indicate that the 238 other class members received erroneous collection letters similar to the one received by Bell. *See* Pl.'s Supplemental Ex. A and Supplemental Ex. B. Unfortunately, because Bowman Heintz did not maintain copies of the collection letters it sent out, it cannot be specifically determined from their records whether the additional 238 class members were in fact sent collection letters stating an incorrect amount of debt owed.

Plaintiff's counsel contacted the 238 other class members to ascertain if any of these individuals still possessed a copy of the original collection letter from Bowman Heintz. In response to this request, Plain-tiff's counsel received a total of seven additional collection letters. All seven letters omitted references to interest owed and thus incorrectly stated the amount actually owed at the time the letter was mailed out. *See* Pl.'s Supplemental Ex. A.

### C. *Bowman Heintz's bona fide error defense.*

Bowman Heintz's President, Glenn S. Vician ("Vician"), asserts that "Bowman Heintz did not intentionally act or decide to avoid providing Bell with a correct validation notice." Vician Aff. at ¶ 12. As evidence of its innocent intentions, Bowman Heintz represents that it has in place several established business procedures to avoid committing such errors. As described by Vician, these procedures include a computerized system to allow creditors to upload information on consumer debt files, including a debtor's name, address, and balance owed. The computer upload automatically opens a consumer debt file in Bowman Heintz's computer.[6] Vician Aff. at ¶ 13. The Bowman Heintz computer system accepts electronic updates on any business day, and the letters generated by the computer always pick up the most recently updated information in the computer. Vician Aff. at ¶ 15. An automated program generates the collection letters in order to minimize the risk of employees incorrectly entering information in the letter. The program inputs the exact balance that the client electronically transmits to Bowman Heintz. Vician Aff. at ¶ 14. All collection letters are reviewed by Bowman Heintz attorneys prior to their being mailed out, as was true of the letter sent to Bell. Vician Aff. at ¶ 16.[7]

---

**6.** This is how the information for Bell's file was obtained by Bowman Heintz.

**7.** Bowman Heintz claims it has several additional procedures designed to eliminate/avoid errors; however, it is unclear how much relevance, if any, these additional procedures have to the current litigation beyond showing a modicum of good faith, generally, in complying with the FDCPA. For example, Bowman Heintz points to:

- Publication of an "in-house" FDCPA compliance manual, which is updated on a regular basis. Vician Aff. at ¶ 5(a).

## Legal Analysis

### I. Summary Judgment Standard

In a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 106 S.Ct. 2548. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994), (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex,* 477

U.S. at 322–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,* 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Waldridge,* 24 F.3d at 920. A plaintiff's self-serving statements, unsupported

- In-house training seminars for paralegals, collectors and other staff members working on consumer debt collection. The seminars are designed to ensure compliance by staff with the FDCPA and to update employees as to changes under the FDCPA as they occur. Vician Aff. at ¶ 5(b).
- Clients fill out a "transmittal letter" provided by Bowman Heintz which elicits very specific information related to the account verified for collection. Vician Aff. at ¶ 5(c)(I).
- Information on consumer loan files is electronically transmitted to the Data Operations Department of Bowman Heintz, which has clerks who are trained to review the information received from the clients and to open new consumer files. Vician Aff. at ¶ 5(c)(ii).
- The Data Operations Clerks are responsible for issuing a validation letter for every consumer debtor account opened by the firm. The validation letters are automatically prepared by the computer. Vician Aff. at ¶ 5(c)(iii).

- After the Data Operations Department issues the validation letter, the file is submitted to the Paralegal Department, which reviews the account information to ensure accuracy and to avoid errors or omissions. Vician Aff. at ¶ 5(c)(iv).
- Next the file is given to an attorney for review of all information originally transmitted by the client, Platinum in this case, and all computer information to ensure accuracy and to avoid errors or omissions. Vician Aff. at ¶ 5(c)(v).
- Bowman Heintz has a multi-step process to ensure that all consumer debtors receive a D78 collection letter on each and every consumer debt being collected by Bowman Heintz. Vician Aff. at ¶ 7.
- Bowman Heintz attorneys review each file and ensure that a D78 letter has been prepared and sent out. Vician Aff. at ¶ 8(c).

Given that the debt information in this case was directly uploaded from the client and the collection letters automatically generated, we are unclear as to which, if any, of these additional procedures are relevant.

by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993).

## II. *Analysis of Defendant's Violation of the FDCPA.*

 It is undisputed that a collection letter which omits the interest due and only lists the unpaid principal does not comply with § 1692g(a)(1) of the FDCPA. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F.3d 872, 875 (7th Cir.2000) (stating, "The unpaid principal balance is not the debt; it is only a part of the debt; the [FDCPA] requires statement of the debt"); *see also Veach v. Sheeks,* 316 F.3d 690, 693 (7th Cir.2003).[8] Accordingly, the collection letter sent to Bell, as well as the seven additional collection letters sent to other class members collected by Plaintiff's counsel, constitute prima facie violations of the FDCPA. Bowman Heintz does not respond to Plaintiff's factual allegations concerning these letters, essentially conceding that it violated the FDCPA in these eight instances. This concession, however, does not resolve the case at bar because there remain, at least, two disputed material facts precluding summary judgment: (A) what was contained in the 231 unrecovered collection letters sent to the other class members; and (B) whether Bowman Heintz's procedures satisfy the requirements of the bona fide error defense. We analyze each of these disputed facts in turn.

## A. *The 231 unrecovered collection letters.*

The central, unresolved question in this litigation is which members of the class, if any, also received the erroneous collection letters from Bowman Heintz. After personally contacting the members of the class, Plaintiff's counsel has only been unable to unearth seven additional collection letters, all of which in similar fashion omitted mention of the interest the debtor owed. Consequently, there is no direct evidence as to what was contained in the missing 231 collection letters sent by Bowman Heintz. This lack of direct evidence is principally the result of Bowman Heintz's policy of not keeping copies of the letters it sends to debtors.

Each of the parties has asked the Court to resolve the uncertainty related to the other 231 letters in its respective favor, and, in so doing, they ask this court to make factual findings based on inferences: Plaintiff argues that there is no reason to doubt that the other class remembers also received erroneous collection letters, given the automated nature of the process Bowman Heintz utilized to produce those letters. Defendant counters that it implemented several procedures to reduce or eliminate the possibility of errors, so there is no reason to assume the other 231 collection letters also contain errors.[9]

The parties' arguments reveal that they both misunderstand the Court's role at summary judgment where we are obligated to draw all reasonable inferences in favor of the non-movant, *i.e.* against a grant of summary judgment. *See Venters*

---

8. Plaintiff further argues that Bowman Heintz violated § 1692e of the FDCPA, which prohibits debt collectors from "using any false, deceptive or misleading representation or means in connection with the collection of any debt," because, prior to sending out the collection letters, Bowman Heintz knew that

Platinum was seeking interest on the unpaid principal balances.

9. Bowman Heintz, however, fails to provide a coherent rationale to explain why their automated procedures would not have generate erroneous collection letters for all the other 231 class members.

*v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997). Accordingly, since genuine doubts (and disputes) remain as to what was contained in the 231 unrecovered collection letters sent to class members, summary judgment is inappropriate on this issue. *See Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).[10]

### B. *Bona Fide Error Exception.*

▇▇ Bowman Heintz argues that, notwithstanding the number of alleged erroneous collection letters it sent out, it is entitled to summary judgment under the bona fide error exception contained at 15 U.S.C. ¶ 1692k(c).[11] To qualify for the bona fide error exception, a debt collector must make three factual showings: (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error (here, erroneous uploading of debt information by Platinum); and (3) it must show that it maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Services, Inc.,* 394 F.3d 530, 537 (7th Cir.2005) (citing *Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir.1997)). Complying with § 1692k(c) does not necessitate that "debt collectors ... take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort,* 394 F.3d at 539 (citing *Hyman v. Tate,* 362 F.3d 965, 968 (7th Cir. 2004) (holding: "Although [the debt collector] could have done more ..., § 1692k(c)

only requires collectors to adopt reasonable procedures")).

We conclude that Bowman Heintz has not mustered sufficient evidence to satisfy all three elements and, therefore, is not entitled to judgment as a matter of law. It is undisputed by the parties that Bowman Heintz unintentionally[12] generated the erroneous collection letters as a result of a bona fide error, to wit, Platinum's failure to upload interest information into Bowman Heintz's computer. However, Defendant has not presented undisputed evidence of reasonable procedures which were designed to avoid this type of error.

In fact, based on our understanding of Bowman Heintz's procedures, the process operated exactly as intended by producing and then sending the erroneous collection letters. From the evidence Defendant has submitted, it appears that an erroneous collection letter will be generated each and every time a credit card company uploads information to Bowman Heintz's computer system which contains the principal balance of a consumer's debt but omits any interest component. While the blame for the incorrect data transmission rests largely with the creditor, Defendant submitted no information to indicate that it has taken reasonable preventative steps to avoid such incorrect data submissions, such as agreements between Bowman Heintz and its clients. *See Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991, 996 (7th Cir.2003).

▇▇ We note that Bowman Heintz has not submitted any evidence to establish

---

10. Our ruling on this matter should come as no surprise to the parties as this is essentially what we advised them during the class certification hearing on October 1, 2004.

11. 15 U.S.C. § 1692k(c) provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponder-

ance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

12. We use "unintentionally" in the sense that the collection letters were automatically generated by a computer.

that it utilizes procedures designed to identify incomplete data submissions from creditors. For example, the computer system apparently does not flag accounts that omit proper interest information.[13] Bowman Heintz apparently does not have procedures in place to send corrected collection notices when a creditor subsequently uploads amended consumer debt information to the computer system.[14]

Defendant has presented no evidence that anyone at Bowman Heintz cross-checked the amounts of the debts listed in the computer-generated collection letters against any of the other information contained in a debtor's file. For example, Plaintiff points to the fact that at the time the collection letter was sent to Bell, Bowman Heintz's records contained an Affidavit in Support of Judgment completed by Platinum stating that the amount of Bell's outstanding debt included interest.[15] Pl.'s Ex. C.

For these reasons, we conclude that Bowman Heintz has not satisfied its evidentiary burden of establishing a bona fide error exception as a matter of law. Accordingly, summary judgment is inappropriate on this defense.

## III. Conduct of Defense Counsel in this Case.

We are moved to officially express our disapproval of the litigation tactics utilized by Defendant in this case, which include the following unacceptable practices: the clear attempt to circumvent our prior rulings in this matter;[16] the failure to disclose the factual basis for its bona fide error defense until after the close of discovery, despite specific discovery requests by Plaintiff's counsel for this information; the initial disclosure to Plaintiff's counsel of substantially incorrect information regarding the size of the putative class;[17]

13. We recognize that the Seventh Circuit has held that the the FDCPA "does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense." *Hyman*, 362 F.3d at 968 (7th Cir. 2004) (citing 15 U.S.C. § 1692k(c); *Jenkins*, 124 F.3d at 834–35 (find a debt collector qualified for "bona fide error" defense where it had in place procedures to prevent violations of the FDCPA, and the collector was not required to independently investigate and evaluate the validity of forced placed insurance charges); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir.1992) (concluding that the "bona fide error" defense does not require a collector to conduct an independent investigation of the debt referred for collection)). However, in the cases cited by the Seventh Circuit, the debt collector had no reason to doubt the validity of the debt information submitted by the creditor-for example, *Hyman* involved a creditor submitting consumer debt information for a debtor who had entered bankruptcy. The case at bar is distinguishable because Plaintiff has produced evidence suggesting that Bowman Heintz knew or should have know that the consumer debt information uploaded by Platinum was incomplete.

14. In fact, it is unclear that Bowman Heintz could identify cases where collection letters were invalidated by updated submissions from creditors since Bowman Heintz does not keep copies of its collection letters or even records of the information contained in the collection letters.

15. We note that the language relating to the fact that the debt included interest is included within the form portion of the affidavit. The form nature of the affidavit, on the one hand, argues against specific notice that any individual debtor owes interest on her consumer debt, but, on the other hand, the fact that the interest language is included in every single affidavit prepared by Platinum should indicate that the company *always* seeks interest from debtors.

16. *See, supra,* note 1.

17. Bowman Heintz initially supplied a list of 2,147 names to plaintiff's counsel. This was allegedly caused by "an error by the computer data operations department in setting parameters to attempt to electronically search for those persons that could be part of the

destruction of all but fifty-one of the paper files it created on the class members, despite the pendency of this lawsuit;[18] and, finally, the deceptive/obstructionist and thoroughly unprofessional conduct by defense counsel and Vician, Bowman Heintz's president, during his deposition and in his affidavit.[19]

### Conclusion

For the above-mentioned reasons, we conclude that summary judgment is unavailable. Accordingly, both parties' motions for summary judgment are *DE-NIED*.

IT IS SO ORDERED.

alleged putative class." Vician Dep. at 7. It was only after directions from the for this court that the current list of 239 names was produced.

18. We notes that Defendant was able to partially ameliorate this failure by obtaining from court files the Notice of Claims for each of the potential class members and by printing the computerized Case Profile it maintained on the class members.

19. For example, Vician asserted that, after reviewing Bowman Heintz's files, he discovered "there are no copies of [collection] letters in such consumer debtor account files that contain false or incorrect statement(s) of the amount of debt as contended by Ms. Bell in her complaint." Vician Aff. at ¶ 17. However, Vician failed to disclose that there are *no* copies of *any* collection letters in the files of the class members. And Vician's deposition reads like an training manual on obstruction and obfuscation. Testimony of this sort creates one, unmistakable impression: the deponent has things he is desperately, and ultimately unconvincingly, trying to hide.