In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1329

GREGORY LEEB,

*Plaintiff-Appellee,*

*v.*

NATIONWIDE CREDIT CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-913 — **Elaine E. Bucklo**, *Judge.*

ARGUED JANUARY 22, 2015 — DECIDED NOVEMBER 20, 2015

Before EASTERBROOK, MANION, and WILLIAMS, *Circuit
Judges*.

WILLIAMS, *Circuit Judge*. Nationwide Credit Corpora-
tion—a debt-collection agency—telephoned Gregory Leeb
about an unpaid medical bill. Leeb disputed the debt, saying
that his insurance company should have paid. Because Leeb
disputed his debt, the Fair Debt Collection Practices Act re-

quired Nationwide to "cease collection" until it verified the debt. 15 U.S.C. § 1692g(b). But, without verifying the debt, Nationwide sent Leeb a letter that: (1) showed a "balance" of $327; (2) instructed Leeb to "detach the upper portion and return with payment"; (3) asked Leeb to provide additional information; and (4) stated that the letter was "from a debt collector attempting to collect a debt and any information obtained will be used for that purpose." Leeb sued Nationwide under the FDCPA.

On summary judgment, the district court held that Nationwide violated the FDCPA because it did not "cease collection." We agree because Nationwide's January 5 letter, objectively viewed, was an attempt to collect the debt. The district court also held that Nationwide was not excused by the FDCPA's "bone fide error" provision. *See* 15 U.S.C. § 1692k(c). We agree because Nationwide failed to show each of the three required elements: that its violation was unintentional; that its violation resulted from a clerical or factual mistake; and that it maintained procedures reasonably adapted to avoid such mistakes. So we affirm the judgment against Nationwide.

## I. BACKGROUND

In May 2011, Leeb received emergency medical care. The medical provider submitted a claim to Leeb's insurance company, Cigna. Cigna asked for additional information but the medical provider never responded, so Cigna closed its file without paying the claim. Later, Nationwide was hired to collect payment.

On December 28, 2011, Nationwide telephoned Leeb about his bill, and Leeb said that Cigna should have paid it.

Leeb then mailed and faxed a letter to Nationwide, disputing the debt. Two days later, he received a letter from Nationwide, dated December 26. Nationwide wrote that it was "extremely important" that the debt be paid "in full," otherwise "collection activity [would] continue," and Nationwide would "report the account to Equifax, Experian, and Trans[U]nion credit reporting agencies." Leeb replied (by fax and mail), demanding that Nationwide acknowledge that his debt was disputed and refrain from making any negative credit reports.

The next day, December 31, Leeb copied Nationwide on a letter he sent to the medical provider, informing the provider that Cigna was responsible for payment. The provider called Leeb and said that it would seek payment from Cigna and would take Leeb's account out of collections. On January 4, 2012, Leeb informed Nationwide (by fax and mail) that the provider was stopping collection efforts.

On January 5, Nationwide sent the letter at the heart of this suit. The letter was generated from a "form letter," and was divided into two portions. The top portion indicated a "balance" of $327. Separating the top and bottom portions was the instruction to "Detach Upper Portion And Return With Payment." In the bottom portion, Nationwide acknowledged Leeb's dispute, but asked him to provide additional information. The bottom portion also included the statement that "[t]his communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose." Leeb sued, contending that

by sending the January 5 letter, Nationwide violated the FDCPA.[1]

## II. ANALYSIS

We review the grant of Leeb's motion for summary judgment de novo, and Nationwide is entitled to a favorable view of the facts and reasonable inferences. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 762 (7th Cir. 2015). Nationwide concedes that Leeb disputed his debt, and that Nationwide did not verify the debt. So the only questions are: (1) did Nationwide "cease collection" as required by § 1692g(b); and if not, (2) was Nationwide's violation a "bona fide error," excused by § 1692k(c)?

### A. Nationwide Did Not "Cease Collection" After Leeb Lodged Dispute.

On the first question, Nationwide asks us to consider two facts: first, that it sent the January 5 letter because Leeb demanded that Nationwide acknowledge that the debt was disputed; and second, that Leeb believed he did not owe the debt. From those facts, Nationwide asks us to infer that Leeb did not subjectively view the January 5 letter as an attempt to collect a debt. And from that inference, Nationwide asks us to conclude that the letter *was not* an attempt to collect a debt (so Nationwide "cease[d] collection" as it was required to do).

But our task under § 1692g(b) is to determine whether Nationwide "cease[d] collection," not whether Leeb subjec-

---

[1] Leeb disputed his debt before he received Nationwide's December 26 letter. But that letter was *sent* before the debt was disputed, so Leeb does not contend that sending the December 26 letter violated the FDCPA.

tively believed that to be so. We have held that an objective standard is used to determine whether a letter was sent "in connection with an attempt to collect a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385–86 (7th Cir. 2010); *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009). An objective standard is likewise appropriate for the similar inquiry of whether, by sending a particular letter, a debt collector failed to "cease collection." Our objective analysis considers the content of the January 5 letter and the context in which it was sent; that context includes the nature and scope of the parties' relationship, Leeb's demand for an acknowledge-ment of the dispute, and Leeb's prior expressed belief that he did not owe the debt. *See Ruth*, 577 F.3d at 799 (considering the content of the letter, the other contents of the envelope, and the nature and scope of the parties' relationship).

Nationwide's letter quoted a "balance" and instructed Leeb to detach the top portion and return it with payment. The letter also asked Leeb for information and stated, "This communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose." *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245–46 (3d Cir. 2014) (holding that sending a letter was an attempt to collect a debt where the letter stated the amount due and that the sender was a "debt collector attempting to collect a debt"). Further, Nationwide's only relationship with Leeb concerned his allegedly defaulted debt. *See Ruth*, 577 F.3d at 799 (finding it relevant that "[t]he only relationship the defendants had with the plaintiffs arose out of [the] ownership of the plaintiffs' defaulted debt"); *cf. Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387–89 (7th Cir. 1998) (where parties' relationship concerned both a defaulted debt and payments owed in the future on a

non-defaulted loan, sending a letter concerning only the latter was not an attempt to collect a debt under the FDCPA).

To be sure, Leeb did not believe that he owed the debt. But that does not strip him of § 1692g(b)'s protection. To the contrary, § 1692g(b) specifically protects debtors like Leeb, who could be pressured by persistent collection efforts to pay debts that are not actually owed. It is also true that Nationwide sent its letter in response to Leeb's demand for an acknowledgement of his dispute. But Leeb did not demand a letter "from a debt collector attempting to collect a debt," stating his "balance" and instructing him to send payment. We conclude that, when the content and context are analyzed objectively, Nationwide's January 5 letter was an attempt to collect a debt, so Nationwide failed to "cease collection," thereby violating § 1692g(b).

### B. Nationwide's Violation Is Not Excused Under FDCPA's "Bona Fide Error" Provision.

Nationwide argues that even if it violated § 1692g(b), its violation is excused under the FDCPA's "bona fide error" provision. That provision precludes liability if "the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Section 1692k(c) was the subject of the Supreme Court's opinion in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (2010). In *Jerman*, a debt collector informed a debtor that she could only dispute her debt if she did so in writing. *Id.* at 578–79. The district court held that that was a misstatement of law, in violation of the FDCPA—a

holding that the Supreme Court assumed was correct. The debt collector argued that § 1692k(c) precluded liability because the violation was unintentional and was the result of its honest belief, informed by thorough legal research, that the FDCPA required disputes to be in writing. *Id*. at 579. The Supreme Court rejected the argument, holding that FDCPA violations excusable under § 1692k(c) must result from "clerical or factual mistakes," not mistakes of law. *Id*. at 587, 604–05. The Court drew support for its conclusion from the statutory requirement that a debt collector maintain "procedures reasonably adapted to avoid" errors. The Court wrote that "procedures" are "processes that have mechanical or other such regular orderly steps" designed to "avoid errors like clerical or factual mistakes," and that legal analysis did not lend itself to such mechanical procedures. *Id.* at 587 (internal quotation marks omitted). Finally, the Court noted that although the debt collector did not intend to violate the FDCPA, its violation resulted from intentional *conduct*, and liability was not limited to willful violations. *Id*. at 581, 584.

In view of *Jerman*, we reject Nationwide's argument that its violation should be excused. To show that its violation was not intentional, Nationwide relies on an affidavit from the employee who sent the January 5 letter. The employee swears that she sent the letter intentionally but that she did not intend to violate the FDCPA. At this stage, that entitles Nationwide to the conclusion that its violation was not willful—but liability is not confined to willful violations. *Jerman*, 559 U.S. at 584.[2] Notably, Nationwide did not argue that its

---

[2] Citing *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536–37 (7th Cir. 2005), Nationwide argues that liability *is* limited to willful violations. But that was not *Kort*'s holding and, after *Jerman*, any dicta to that

employee was unaware of all of the contents of the January 5 letter (which, remember, was generated from a form letter). So Nationwide's violation was just as intentional as the violation in *Jerman*.

Moreover, Nationwide has not shown that its violation resulted from a "bona fide error," which the Supreme Court instructs are "clerical or factual mistakes." *Jerman*, 559 U.S. at 587. Nationwide argues that its "policy is to never send the January 5th letter in response to … disputes… ." But whether sending the letter violated company policy is not the question. Nationwide does not explain how intentionally sending a letter can be considered a "clerical or factual mistake[]."

Finally, Nationwide failed to show that it maintained "procedures reasonably adapted to avoid" errors that could result in this type of violation. Nationwide first argues that it maintained adequate procedures because its employees were trained on the FDCPA. But *Jerman* held that mistakes of law are not excused and so rejected the debt collector's legal training as an adequate "procedure." *See id*. at 628 (Kennedy, J., dissenting) (noting that the debt collector had "designated a lead FDCPA compliance attorney, who regularly attended conferences and seminars; subscribed to relevant periodicals; distributed leading FDCPA cases to all attorneys; trained new attorneys on their statutory obligations; and held regular firm-wide meetings on FDCPA issues").

---

effect misstates the law. *Kort*'s holding was limited: where a separate federal law requires debt-collection letters to include specific text, and that text is later held to be misleading, a debt collector that used the required text is covered by the "bona fide error" provision. *Id*. at 539. Those are not our facts, so we do not revisit *Kort*.

Nationwide next argues that it maintained adequate procedures because sending the January 5 letter was against its "policy." But *Jerman* instructs that "procedures" are "processes that have mechanical or other such regular orderly steps… ." *Id*. at 587 (internal quotation marks omitted). Nationwide does not argue that its "policy" told its employee what she *should have* done, much less that the policy gave her any "mechanical" or "regular orderly" steps to follow. Following *Jerman*'s instruction, we reject the argument that a thinly specified "policy," allegedly barring some action but saying nothing about what action to take, is an adequate "procedure" under § 1692k(c).[3] Nationwide has failed to show that its FDCPA violation should be excused under § 1692k(c).

### III. CONCLUSION

We AFFIRM the judgment of the district court.

---

[3] Determining whether a debt collector's "procedures" are "reasonably adapted" to avoid errors is "is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law." *Owen v. I. C. Sys., Inc.*, 629 F.3d 1263, 1277 (11th Cir. 2011). So "in concluding that [Nationwide] is not entitled to § 1692k(c)'s bona fide error defense under the particular factual circumstances in this case, we refrain from volunteering sweeping generalizations about what procedures would be enough for a debt collector to effectively assert that defense. Such matters are better resolved on a case-by-case basis." *Id*.