# STATE OF MICHIGAN

# COURT OF APPEALS

GARY D. NITZKIN,

        Plaintiff-Appellant,

v

ROBERT M. CRAIG, also known as LAW
OFFICES OF ROBERT M. CRAIG &
ASSOCIATES, and GUARDIAN ALARM
COMPANY OF MICHIGAN,

        Defendants-Appellees.

FOR PUBLICATION
June 21, 2018
9:00 a.m.

No. 337744
Oakland Circuit Court
LC No. 2016-155993-AV

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Gary Nitzkin, appeals by leave granted[1] the circuit court's order affirming the district court's orders granting summary disposition in favor of defendants, Guardian Alarm Company of Michigan and Robert Craig, also known as Law Offices of Robert M. Craig & Associates. For the reasons stated in this opinion, we reverse and remand for further proceedings.

## I. BASIC FACTS

In October 2015, Nitzkin received a collection letter with the letterhead of the "Law Offices of Robert M. Craig & Associates." The letter indicated that he owed Guardian $25.16, and it stated:

    My client, Guardian Alarm Company, has turned the above account over to me for collection. Unless the validity of this debt is disputed in writing within thirty (30) days of receipt of this notice, this debt will be assumed to be valid by Guardian Alarm.

---

[1] *Nitzkin v Craig*, unpublished order of the Court of Appeals, entered August 30, 2017 (Docket No. 337744).

-1-

If this debt is disputed; or any portion thereof, you may receive a verification of the debt or a copy of any court judgment against you by notifying the undersigned in writing at the above address of the disputed amount and requesting a verification of the debt.

If the debt is owed to a creditor different than the original creditor, you may obtain the name and address of the original creditor by making a written request within thirty (30) days of receipt of this notification.

Certainly, you can see the benefit of settling this dispute in an amicable manner. We do not feel it was your intention to allow this matter to escalate to the current situation. Let's work together to resolve this matter to everyone's satisfaction.

This letter is being sent to you with the intent to collect a debt. Any information obtained will be used for that purpose.

The letter was purportedly written by "Joan Green," who was identified on the letter as a legal assistant.

Nitzkin, a debt-collection lawyer, believed that the letter was sent in violation of the Fair Debt Collection Practices Act (FDCPA), 15 USC 1692 *et seq.*, and he filed a complaint against Guardian, Craig,[2] and Green[3] alleging several violations of the Act. Following discovery, Guardian moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), asserting that because it was not a "debt collector" as that term is defined by the FDCPA, it was not subject to the requirements of the FDCPA. Craig also moved for summary disposition. Like Guardian, he asserted that he was not a "debt collector," so he could not violate the FDCPA. Alternatively, he contended that even if he had violated the FDCPA, his violation was excused under the Act's "bona fide error" provision. The district court granted Guardian's motion for summary disposition, concluding that Guardian was a creditor, not a debt collector. And, although it concluded that Craig was a debt collector, the court stated that any violation of the FDCPA was excused because there was no genuine issue of material fact with regard to whether the bona fide error defense was applicable. Nitzkin appealed to the circuit court, which affirmed the district court and dismissed Nitzkin's appeal.

---

[2] Craig initially failed to respond to the complaint, and a default was entered against him. The district court, however, granted Craig's motion to have the default set aside. The default and the district court's decision to set it aside have not been challenged on appeal.

[3] Green has been dismissed from the case and is no longer a party.

## II. REVIEW BY CIRCUIT COURT

### A. STANDARD OF REVIEW

Nitzkin first argues that the circuit court applied the wrong standard of review when it evaluated his appeal. Whether a court applied the correct standard of review is a question of law, which we review de novo on appeal. See *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009).

### B. ANALYSIS

The circuit court in this case stated near the end of its oral ruling that it was "satisfied" that the district court did not abuse its discretion when granting summary disposition to Guardian and Craig. Challenges to a court's decision to grant or deny summary disposition are reviewed de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The mere fact that the court recited the wrong standard is not dispositive, however. When it began its ruling, the court stated that it was conducting a de novo review. It also noted that its review of the case and the briefs led it to its conclusion that summary disposition had been properly granted in Guardian and Craig's favor. Thus, although the court inadvertently recited the wrong standard at the conclusion of its ruling, given that it started with the correct standard and indicated that it had, in fact, conducted a de novo review of the case, we discern no reversible error.

## III. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Nitzkin argues that the trial court erred by granting summary disposition in favor of Craig and Guardian. He also asserts that the trial court also erred by not granting summary disposition in his favor under MR 2.116(I). We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Barnard Mfg Co, Inc*, 285 Mich App at 369.

### B. ANALYSIS

#### 1. APPLICABILITY TO THE FDCPA TO GUARDIAN AND CRAIG

The FDCPA does not apply to every attempt by a creditor to collect a debt from a debtor. Instead, it applies when a "debt collector" is attempting to collect a debt from a "consumer." This is made clear in 15 USC 1692, where Congress explains that the purpose of the FDCPA is "to eliminate abusive *debt collection* practices *by debt collectors*, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action *to protect consumers* against debt collection abuses." (Emphasis added). "To further these ends, the FDCPA 'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection.' " *Vincent v The Money Store*, 736 F3d 88, 96 (CA 2, 2013), quoting *DeSantis v*

*Computer Credit, Inc*, 269 F3d 159 (CA 2, 2001).[4]  Thus, because the FDCPA regulates the conduct of "debt collectors" as that term is defined by the FDCPA, our first inquiry is whether Guardian and Craig are "debt collectors" under the Act.

As relevant to the claim against Guardian, the term "debt collector" is defined by 15 USC 1692a(6), as follows:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, *the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.*  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.  The term does not include—
>
> * * *
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (*i*) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (*ii*) concerns a debt which was originated by such person; (*iii*) concerns a debt which was not in default at the time it was obtained by such person; or (*iv*) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.  [Emphasis added.]

Based on this definition, if Guardian is a "debt collector" it is (1) a creditor, (2) collecting its own debts, (3) while using any name other than its own that indicates a third party is collecting or attempting to collect the debt, and (4) the exclusion in § 1692a(6)(F) does not apply.  See also *Henson v Santander Consumer USA, Inc*, 817 F3d 131, 136 (CA 4, 2016) (noting that the definition of "debt collector" includes "a person who collects *its own debts*, using *a name other than its own* as if it were a debt collector.").

The term "creditor" is defined by 15 USC 1692a(4), which provides that a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed . . . ."  In this case, it is undisputed that Guardian extended credit to Nitzkin and that the extension of credit created a debt.  So the first requirement of the above definition of a debt collector is met.

---

[4] "While the decisions of federal circuit courts are not binding, they may be persuasive." *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 716 n 5; 854 NW2d 509 (2014) (quotation marks and citation omitted).

With regard to the second and third requirements, the letter and Craig's deposition testimony make it clear that Guardian was collecting a debt owed to it while using the name of another. At the outset, the letter was sent to collect a debt owed to Guardian. Further, the letterhead indicated that the letter was sent from the "Law Offices of Robert M. Craig & Associates," and was signed by Joan Green, a legal assistant. Craig testified at his deposition that at all times relevant to this lawsuit, he worked as general or in-house counsel for Guardian. He explained that Guardian signed his paycheck, which was made payable to him as an individual. He also stated that the "Law Offices of Robert M. Craig & Associates" was not a separate legal entity as it was just a name he used to do business while employed by Guardian. Although Guardian's name appeared on the letter, the letter referred to Guardian as a "client" of the Law Office or Green, which suggests a separation of identity. Further, the letter stated that Nitzkin's account with Guardian was "turned . . . over" to the Law Offices/Green, which again suggests that Guardian and the individual attempting to collect the debt were different entities. Accordingly, viewed in the light most favorable to Nitzkin, the nonmoving party, Guardian attempted to collect a debt owed to it while using the name of another. The second and third requirements are, therefore, satisfied.

Finally, the fourth requirement is that the exclusion in § 1692a(6)(F) does not apply. Here, there is no evidence or suggestion that any of the situations set forth in that provision apply.

Despite Guardian meeting the definition of "debt collector" in 15 USC 1692a(6), the district court relied upon a statement in *Bridge v Ocwen Fed Bank, FSB*, 681 F3d 355, 359 (CA 6, 2012) for the proposition that the terms "creditor" and "debt collector" are mutually exclusive. The court then concluded that because Guardian satisfied the definition of "creditor" in 15 USC 1692a(4), it could not also be a "debt collector" under 15 USC 1692a(6). However, in context, the *Bridge* Court explained that "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Id*. (quotation marks and citation omitted). Here, because the more specific statutory language in § 1692a(6) applies, Guardian is properly considered a debt collector, not a creditor when evaluating the specific debt at issue. To hold otherwise would be to render nugatory the provision in § 1692a(6), which expressly provides that a creditor is a debt collector under specific circumstances. See *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002) (stating that we must interpret statutory language so as to avoid rendering any portion of that statutory surplusage or nugatory). See also *Maguire v Citicorp Retail Serv, Inc*, 147 F3d 232, 235 (CA 2, 1998) ("As a general matter, creditors are not subject to the FDCPA. However, a creditor becomes subject to the FDCPA if the creditor in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.") (citation and quotation marks omitted).

Thus, for the foregoing reasons, the trial court erred by granting summary disposition to Guardian on the basis that Guardian was not a debt collector under the FDCPA.

We also reject Craig's contention that he is not properly considered a debt collector under the FDCPA. Although Craig was an employee of Guardian at the time the October 2015 letter was sent, and even though Craig testified that he did not personally attempt to collect the $25.16 debt from Nitzkin, Craig testified that he was partially involved in collecting debts for Guardian.

He explained that as part of his work at Guardian, he acquired a form collection letter from a lawyer "who [did] nothing but collections" and that he approved that letter to be used to collect debts from individuals who owed between $250 and $500 to Guardian. When shown a copy of the October 2015 letter sent to Nitzkin, he agreed that the letter appeared to match the paragraphs in the form collection letter that he had approved for use by Guardian to collect debts. Therefore, when the October 2015 collection letter was sent, it was sent by Craig's "law office" on a form that he approved in order to collect a debt owed to Guardian. This satisfies the requirement that Craig is debt collector because he is someone who regularly, albeit indirectly, attempted to collect a debt owed or due to another. See 15 USC 1692a(6).

Craig argues, however, that despite meeting the general definition in 15 USC 1692a(6), he is excluded from the definition of debt collector by 15 USC 1692a(6)(A) and (B), which provide that a person is not a debt collector if that person is:

> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts[.]

However, subdivision (A) is inapplicable because, although Craig was employed by Guardian, he was not collecting a debt for Guardian using Guardian's name. In addition, subdivision (B) is inapplicable because, as the Sixth Circuit Court of Appeals has observed, 15 USC 1692a(6)(B) refers to artificial persons, because "[n]atural persons are not related or affiliated in those ways." *Anarion Investments LLC v Carrington Mtg Servs, LLC*, 794 F3d 568, 569 (CA 6, 2015). See also *Cruz v Int'l Collection Corp*, 673 F3d 991, 999 (CA 9, 2012) (explaining that the employee of debt collector may be held liable for violations of FDCPA if the employee independently meets the definition of the term "debt collector"); and *Pollice v Nat'l Tax Funding, LP*, 225 F3d 379, 404 (CA 3, 2000) (stating "vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the lawyer and the client are debt collectors") (quotations marks and citations omitted). Thus, contrary to Craig's argument on appeal, the trial court properly determined that Craig is a debt collector.

## 2. BONA FIDE ERROR

Nitzkin argues that the trial court erred by granting summary disposition to Craig on the basis that even if he violated the FDCPA his violations were excused under the "bona fide error" provision in 15 USC 1692k(c). That provision precludes liability "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 USC 1692k(c). Stated differently, the debt collector must show (1) that its violation resulted from unintentional conduct, *Jerman v Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 US 573, 584; 130 S Ct 1605; 176 L Ed 2d 519 (2010); (2) that the violation resulted from a "bona fide error," i.e. from a "clerical or factual mistake," *id*. at 587; and (3) that the debt

collector maintained "procedures reasonably adapted to avoid any such [clerical or factual] error[s]," *id*. (quotation marks and citation omitted).

Here, Craig argues that any violations he committed were unintentional because he was wholly uninvolved in sending the collection letter to Nitzkin. He testified that he did not draft the letter, did not approve it, and would not have approved it if it had been shown to him before being sent to Nitzkin. He further testified that the "policy" of Guardian was to not send the collection letter for debts under $250, so the letter in this case ought to have never been sent in the first place.

However, Craig has not shown that his alleged violation resulted from a bona fide error, i.e., a "clerical or factual mistake." See *id*. at 587. Although there is testimony that sending the October 2015 letter violated Guardian's debt-collection policy, Craig has not explained how intentionally sending a letter is a clerical or factual mistake. Moreover, Craig has failed to show that he or Guardian maintained "procedures reasonably adapted to avoid" errors that result in this type of violation. Indeed, he only testified that there were "policies" against sending collection letters to collect debts less than $250, but he offered no testimony about what steps were taken to ensure that those procedures would prevent the type of error that allegedly occurred in this case. In *Leeb v Nationwide Credit Corp*, 806 F3d 895, 899 (CA 7, 2015), the Seventh Circuit rejected a similar argument, reasoning:

> Nationwide next argues that it maintained adequate procedures because sending the January 5 letter was against its "policy." But *Jerman* instructs that "procedures" are "processes that have mechanical or other such regular orderly steps . . . ." [*Jerman*, 559 US] at 587 (internal quotation marks omitted). Nationwide does not argue that its "policy" told its employee what she *should have* done, much less that the policy gave her any "mechanical" or "regular orderly" steps to follow. Following *Jerman's* instruction, we reject the argument that a thinly specified "policy," allegedly barring some action but saying nothing about what action to take, is an adequate "procedure" under § 1692k(c).

We agree with the reasoning in *Leeb*, and conclude that Craig has failed to show that his alleged FDCPA violation should be excused under § 1692k(c).[5] Consequently, the trial court erred by granting summary disposition to Craig on the basis that the bona fide error defense excused any violation of the FDCPA that he might have committed.[6]

---

[5] In *Leeb*, the Seventh Circuit noted that "[d]etermining whether a debt collector's 'procedures' are 'reasonably adapted' to avoid errors is [sic] 'is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law." *Leeb*, 806 F3d at 900 n 3 (quotation marks and citation omitted). We agree. Accordingly, we only hold that, on the particular facts currently before this Court, Craig has failed to meet his burden under § 1692k(c).

[6] Given our resolution, we decline to address Nitzkin's argument that Craig waived the bona-fide-error defense by failing to properly raise it as an affirmative defense under MCR 2.111(F).

## 3. DAMAGES

Craig and Guardian both suggest that we should affirm the trial court's orders granting them summary disposition because Nitzkin has no actual damages. However, a consumer filing suit under the FDCPA need not establish that he or she suffered actual damages As explained in *Wise v Zwicker & Assoc, PC*, 780 F3d 710, 713 (CA 6, 2015), "[u]nder the FDCPA, a plaintiff does not need to prove knowledge or intent to establish liability, nor must he show actual damages, which places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." (Citation and quotation marks omitted). Still, we note that

> When an alleged violation is trivial, the "actual damage[s]" sustained, § 1692k(a)(1), will likely be de minimis or even zero. The Act sets a cap on "additional" damages, § 1692k(a)(2), and vests courts with discretion to adjust such damages where a violation is based on a good-faith error, § 1692k(b). . . . The statute does contemplate an award of costs and "a reasonable attorney's fee as determined by the court" in the case of "any successful action to enforce the foregoing liability." § 1692k(a)(3). But courts have discretion in calculating reasonable attorney's fees under this statute, and § 1692k(a)(3) authorizes courts to award attorney's fees to the defendant if a plaintiff's suit "was brought in bad faith and for the purpose of harassment." [*Jerman*, 559 US at 599.]

## 4. MCR 2.116(I)

Finally, Nitzkin contends that the trial court erred by denying his motion for summary disposition under MCR 2.116(I). Although the trial court did not address this issue, it was raised before the trial court and is an issue of law for which all the necessary facts are present. See *Poch v Anderson*, 229 Mich App 40, 52; 580 NW2d 456 (1998).

When evaluating whether the FDCPA has been violated, "the conduct is viewed through the eyes of the 'least sophisticated consumer." *Currier v First Resolution Inv Corp*, 762 F3d 529, 533 (CA 6, 2014). "This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Id*.

Nitzkin contends that the collection letter he received violated the notice provision in 15 USC 1692g(a), which provides in relevant part:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> * * *

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

Nitzkin contends that § 1692g(a)(3) was violated because the letter stated that he had to dispute the debt "in writing within thirty (30) days of receipt of the notice" or the debt would be assumed valid. In *Clark v Absolute Collection Serv, Inc*, 741 F3d 487, 488-489 (CA 4, 2014), the Fourth Circuit Court of Appeals was asked to determine whether a debt collector violated § 1692g(a)(3) by requiring a consumer to dispute a debt in writing. The *Clark* Court noted that the federal circuit courts were split on the issue:

The Third Circuit has held that section 1692g(a)(3) must be read to include a writing requirement, finding any other reading contrary to the purposes of the FDCPA. See *Graziano v Harrison*, 950 F2d 107 (CA 3, 1991). In contrast, the Second and Ninth Circuits have found that the plain text of section 1692g(a)(3) permits oral disputes, and that such a reading results in a logical, bifurcated scheme of consumer rights. See *Hooks v Forman, Holt, Eliades & Ravin, LLC*, 717 F3d 282 (CA 2, 2013); *Camacho v Bridgeport Fin Inc*, 430 F3d 1078 (CA 9, 2005). [*Clark*, 741 F3d at 490.]

The *Clark* Court then reasoned:

In line with the Second and Ninth Circuits, we find that the FDCPA clearly defines communications between a debt collector and consumers. Sections 1692g(a)(4), 1692g(a)(5), and 1692g(b) explicitly require written communication, whereas section 1692g(a)(3) plainly does not. [The debt collector] asks that we disregard the statutory text to read into it words that are not there. We decline to do so. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v United States*, 464 US 16, 23; 104 S Ct 296; 78 L Ed 2d 17 (1983) (internal quotation marks omitted). [*Id*. at 490-491.]

We agree with the *Clark* Court that the statutory language indicates that Congress intended a consumer to be able to orally dispute a debt under § 1692g(a)(3). Accordingly, because the October 2015 collection letter expressly required Nitzkin to dispute the validity of the debt in writing, it violated § 1692g(a)(3) of the FDCPA.

Nitzkin next argues that the October 2015 collection letter violates § 1692g(a)(4) of the FDCPA, which provides that notice to the consumer must include:

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

Nitzkin contends that this section is violated because the letter states: "If this debt is disputed, or any portion thereof, you may receive a verification of the debt or a copy of any court judgment against you by notifying the undersigned in writing at the above address of the disputed amount and requesting a verification of the debt." He argues that this is insufficient notice under § 1692g(a)(4) because it does not state that, in order to receive verification, the consumer must notify the debt collector in writing *within thirty days*. Although the 30-day deadline is set forth in the sentences before and after the challenged sentence, the least sophisticated consumer could arguably conclude that the 30-day deadline applies only to the rights set forth in the other sentences. Alternatively, because that is the only deadline stated in the letter, a consumer could also determine that everything it does must be done within the 30-day deadline, especially given that the 30-day deadline is twice stated in the letter. Although one of those interpretations would, technically, lead to compliance with § 1692g(a)(5), to the extent that the letter could be interpreted as permitting a consumer to request verification either with or without regard to the 30-day deadline, the collection letter violates the FDCPA. See *Russell v Equifax ARS*, 74 F3d 30, 35 (CA 2, 1996) ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.").

Finally, Nitzkin argues that the collection letter violates § 1692e(5) of the FDCPA, which provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> * * *

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

Nitzkin asserts that the October 2015 letter threatened to file a lawsuit because it stated: "Certainly, you can see the benefit of settling this dispute in an amicable manner." Nitzkin points out that, although the letter threatens to take legal action, Craig testified that neither he nor Guardian would file a lawsuit over a $25.16 debt. We conclude, however, that the vague language in the letter would not lead the least sophisticated consumer to believe that his failure to settle a $25.16 debt would lead the debt collector to file suit against him. Accordingly, we conclude that Nitzkin has not established that Guardian and Craig violated § 1692g(a)(5).

Nevertheless, because Nitzkin established that there is no genuine issue of material fact with regard to whether Guardian and Craig violated at least some provisions of the FDCPA, we direct the district court to enter an order granting Nitzkin summary disposition on his claims against Craig and Guardian.

## IV. CONCLUSION

For the reasons stated in this opinion we reverse the court's orders granting summary disposition to Guardian and Craig and remand for further proceedings. On remand the district court is directed to enter an order of summary disposition in Nitzkin's favor against Craig and Guardian. The court shall independently address the issue of damages.

Reversed and remanded for further proceedings. We do not retain jurisdiction. Nitzkin may tax costs as the prevailing party. MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien