In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-1904

MEHDI ABDOLLAHZADEH,

*Plaintiff-Appellant,*

*v.*

MANDARICH LAW GROUP, LLP,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CV 8682 — **Manish S. Shah**, *Judge.*

_____

ARGUED OCTOBER 30, 2018 — DECIDED APRIL 29, 2019

_____

Before WOOD, *Chief Judge*, and SYKES and BARRETT, *Circuit Judges*.

SYKES, *Circuit Judge*. Mehdi Abdollahzadeh opened a credit-card account with MBNA America Bank in 1998 and used it to make various personal, family, and household purchases. Twelve years later he defaulted on his debt, making his last payment in August 2010. In June 2011 he attempted another payment, but it never cleared. In April

2013 the bank sold the delinquent account to CACH, LLC, a debt buyer.

CACH referred Abdollahzadeh's debt to the Mandarich Law Group, LLP ("Mandarich"), a debt-collection firm. CACH identified the later, unsuccessful payment attempt as the last payment on the account. Relying on this date, Mandarich sent a collection letter to Abdollahzadeh on December 3, 2015, and then sued him in state court when it received no response. The state court dismissed the suit because the last payment to clear occurred outside of Illinois's five-year statute of limitations.

Abdollahzadeh sued Mandarich for attempting to collect a time-barred debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA" or "the Act"). His claims centered on the collection letter and the state-court collection action. Mandarich moved for summary judgment citing the bona fide error defense. *Id.* § 1692k(c). The district court granted the motion, concluding that the violations were unintentional and occurred despite reasonable procedures aimed at avoiding untimely collection attempts.

Abdollahzadeh challenges that ruling on several grounds. First, he argues that Mandarich's continuation of the collection action after it learned the true last-payment date creates a factual dispute on the issue of intent. He also contends that the law firm's reliance on CACH's representations about the last-payment date was an abdication of its duty to engage in meaningful review and thus was unreasonable as a matter of law. Finally, he characterizes the firm's procedures for weeding out time-barred debts as "thinly

specified policies" insufficient to support the affirmative defense.

We reject these arguments and affirm. The bona fide error defense doesn't require the independent verification and procedural perfection Abdollahzadeh seems to think necessary. The undisputed evidence shows that any FDCPA violations were the unintentional result of a bona fide mistake. And Mandarich had procedures in place that, while simple, were reasonably adapted to avoid late collection efforts.

## I. Background

Abdollahzadeh opened an MBNA credit-card account in 1998 and used it to pay for personal, family, and household expenses. In 2010 MBNA, later renamed FIA Card Services ("FIA"), declared Abdollahzadeh's debt to be in default. The last payment to clear on the account—one for $300—was made on or around August 3, 2010. FIA charged off Abdollahzadeh's account on March 31, 2011. He tendered a payment toward the account on June 30, 2011, in the amount of $1,670.96, but it never cleared.

FIA sold Abdollahzadeh's delinquent debt to CACH in April 2013 pursuant to a Loan Sale Agreement. SquareTwo Financial Corp. ("SquareTwo"), CACH's parent company, retained Mandarich for collection services. Under its retainer agreement, SquareTwo stated that it "does not warrant the completeness, correctness or accuracy of Account Data" and has no "liability for any incomplete, incorrect, or inaccurate Account Data." The agreement also required Mandarich to follow SquareTwo's operating procedures in its efforts to collect on CACH-owned credit accounts. Accordingly, the

firm adopted SquareTwo's "Out of Statute Account Policy" for addressing statute-of-limitations issues.

As a matter of policy, both Mandarich and CACH prohibit untimely collection efforts. They refer to debts falling outside of the applicable limitations period as "out-of-statute" debts. When the statute of limitations expires for any account not in active litigation, Mandarich's policy is to immediately cancel the account and return it to the creditor. To check for out-of-statute accounts, Mandarich attorneys analyze account data—specifically the date of last payment—and the relevant state's statute of limitations. While the firm has no written policy defining the date of last payment, in practice it uses the last payment to clear as the last payment on the account. To ascertain the last-payment date, Mandarich relies on account reports provided by CACH and its parent company. For its part, SquareTwo subjects the data used to generate these reports to a nightly computerized "scrub." SquareTwo uses its scrubbing software to identify last-payment dates that place an account beyond the relevant statute of limitations. Any out-of-statute account identified by the scrub, including those owned by CACH, is immediately recalled.

On or around December 1, 2015, CACH placed Abdollahzadeh's account with Mandarich for collection. Following its usual practice, CACH provided Mandarich with the bill of sale memorializing its purchase, a document called "Schedule 1" containing FIA's electronic-transfer file for the account, and an Account Information Report generated by CACH itself. Schedule 1 includes the date the account was opened, the date of last payment, and the charge-off date. It also displays Abdollahzadeh's current balance and

his balance at the charge-off date. The Account Information Report, created using proprietary software, contains similar data. As we've noted, Mandarich and CACH normally identified the last payment to clear as the last payment for statute-of-limitations purposes. In this case, however, the Schedule 1 and Account Information Report identified the reversed June 30, 2011 payment attempt as Abdollahzadeh's last payment. And both documents list Abdollahzadeh's current balance as $16,709.62—the same balance he carried at the March 2011 charge-off date.

On December 3, 2015, Mandarich sent Abdollahzadeh a "demand for payment of [his] outstanding obligation." The firm made clear that the letter was a "communication … from a debt collector." Receiving no response, on February 11, 2016, Mandarich filed a collection action in Cook County Circuit Court alleging breach of contract. Attached to the complaint was an affidavit from CACH averring that the account information it provided was correct. On March 14, 2016, Abdollahzadeh called Mandarich and said that his June 2011 payment of $1,670.96 had settled the debt. Less than a month later, however, he moved to dismiss the suit as untimely, claiming that it was filed after the expiration of Illinois's five-year statute of limitations. *See* 735 ILL. COMP. STAT. 5/13-205 (2011). Abdollahzadeh identified the August 3, 2010 payment as the last payment for purposes of the statute of limitations.

At that point Mandarich contacted CACH to clarify the date of Abdollahzadeh's last payment. CACH responded that the June 30, 2011 payment identified in its account information hadn't cleared and that the last payment without reversal occurred on August 3, 2010. Nevertheless,

Mandarich determined that it was obligated to oppose the motion to dismiss on its client's behalf because it "could make a good faith argument that the claim was not time barred." The state court ultimately sided with Abdollahzadeh and dismissed the action as untimely.

Abdollahzadeh then sued Mandarich and CACH alleging FDCPA violations. Specifically, he complained that the defendants violated 15 U.S.C. §§ 1692e and 1692f by sending a misleading collection letter and suing to collect an out-of-statute debt. He claimed that these actions caused emotional distress and financial losses in the form of state-court litigation expenses. CACH was dismissed by stipulation, and the case proceeded to cross-motions for summary judgment.

The district court entered judgment for Mandarich based on the affirmative defense provided in § 1692k(c) for "bona fide error." The judge held that the undisputed evidence established that any violation of the Act was the unintentional result of a bona fide error and had occurred despite Mandarich's reasonable procedures to guard against attempts to collect time-barred debts. CACH's account information showed an identical balance before and after the failed 2011 payment, which supported an inference that Mandarich should have known to double-check the last-payment date. But the firm's failure to do so was simply an error; no evidence supported an inference that Mandarich had "intentionally overlooked the discrepancy." Abdollahzadeh insisted that the accuracy disclaimer in SquareTwo's retainer agreement made it unreasonable as a matter of law for Mandarich to rely on CACH's data. He also maintained that Mandarich's decision to oppose Abdollahzadeh's motion to dismiss in state court was evi-

dence of an intentional FCDPA violation. The judge disagreed on both counts. Finally, the judge rejected Abdollah-zadeh's arguments about the insufficiency of the firm's procedures for avoiding out-of-statute collection attempts. Those procedures, he said, were "imperfect" but "reasonable as a matter of law."

## II. Discussion

We review a summary judgment de novo, "construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was filed." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Fair Debt Collection Practices Act protects debtors from "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It places restrictions on debt collectors' communications with debtors and third parties; bans "false, deceptive, or misleading representation[s]"; and prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* §§ 1692c, 1692e, 1692f. Debt collectors who violate the Act are subject to civil liability. *Id.* § 1692k. But the Act also includes an affirmative defense:

> A debt collector may not be held liable in any
> action brought under this subchapter if the

> debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

*Id.* § 1692k(c).

Essentially restating the statute, we've explained that this bona fide error defense requires the debt collector to make three showings: "(1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error … ; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The defense "does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010). In other words, "a defendant can invoke the bona fide error defense only if it claims it made an error of *fact*, not an error of *law*." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018) (citing *Jerman*, 599 U.S. at 604–05).

We assume for present purposes that Mandarich violated the Act by sending the collection letter and filing the state-court collection action. Both were attempts to collect a time-barred debt. As the district judge properly concluded, however, the undisputed facts establish the elements of the bona fide error defense. Mandarich's factual mistake—using the wrong date of last payment in its statute-of-limitations analysis—resulted in unintentional violations of the Act despite reasonable procedures to prevent errors of this type.

Abdollahzadeh resists this conclusion on several grounds. We're not persuaded.

## A. Intent

The bona fide error defense doesn't protect intentional lawbreakers. To establish that its error was unintentional, "[a] debt collector need only show that its FDCPA *violation* was unintentional, not that its *actions* were unintentional." *Kort*, 394 F.3d at 537 (emphases added) (citing *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002)).

At the time of the violations at issue here, Mandarich was unaware that Abdollahzadeh's debt fell outside of Illinois's five-year statute of limitations. Following its established policies, the law firm relied on the account information provided by CACH. That information consistently identified June 30, 2011, as the date of Abdollahzadeh's last payment. The firm was unaware of the key facts that the 2011 payment was reversed and that the final payment to clear actually occurred in 2010. That negates any inference that the FCDPA violations were intentional.

Abdollahzadeh maintains that material factual disputes remain regarding Mandarich's intent. Relying on out-of-circuit cases, he argues that unintentional FDCPA violations can become intentional if the debt collector persists in litigation after learning of its defects. Assuming for the sake of argument that the statutory text can support that proposition (Mandarich disputes the point), the cases cited in support are distinguishable. Each contains aggravating factors making the debt collector's actions significantly less innocent.

For example, in *Currier v. First Resolution Investment Corp.*, 762 F.3d 529, 537–38 (6th Cir. 2014), the court held that the bona fide error defense did not apply where the debt collector failed to release a judgment lien in the face of a motion to vacate the judgment and made no showing that it had procedures in place to avoid the error. Here, in contrast, Mandarich has procedures in place to avoid suing on time-barred debts. In *Thompson v. D.A.N. Joint Venture III, L.P.*, No. 1:05-CV-938-TFM, 2007 WL 1625926, at *2 (M.D. Ala. June 5, 2007), a district judge rejected the bona fide error defense where the debt collector "was on notice after the summary judgment opinion [that] the debt was barred by the statute of limitations." This case is materially different: Mandarich didn't continue collection efforts after a dispositive order from a court. In *Elder v. David J. Gold, P.C.*, No. 08CV733A, 2009 WL 2580320, at *3 (W.D.N.Y. Aug. 18, 2009), a district judge declined to allow the defense when the debt collector had no basis for continuing a state-court collection action after being advised of a clear venue error. Nothing similar occurred here. Mandarich determined that it had a good-faith basis to oppose the dismissal motion and thus had an obligation to do so on its client's behalf. Finally, unlike the debt collector in *Canady v. Wisenbaker Law Offices, P.C.*, 372 F. Supp. 2d 1379, 1384 (N.D. Ga. 2005), Mandarich didn't violate its own internal error-prevention procedures once the suit began.

In short, no evidence suggests that Mandarich intentionally violated the Act.

## B. Reliance on Creditor-Provided Account Data

Abdollahzadeh also challenges Mandarich's reliance on the account data provided by CACH. He argues that the

accuracy disclaimer in the retainer agreement made the firm's decision to trust CACH's last-payment date unreasonable as a matter of law. He also claims that the firm should have noticed that his balance remained unchanged after the reported last payment, which should have prompted further inquiry.

First, the disclaimer in the retainer agreement doesn't defeat the bona fide error defense because "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). Abdollahzadeh relies on *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011), but that case bears no resemblance to this one. Under the agreement at issue there, the creditor made "no warranty as to the accuracy or validity of data provided," and the debt collector was "responsible to determine [its] legal and ethical ability to collect." *Id.* at 945 (alteration in original). Under those circumstances, the Ninth Circuit concluded that the debt collector's reliance on a communication from the creditor was "unreasonable as a matter of law," citing the disclaimer as a factor in its analysis. *Id.* at 949. Moreover, *McCollough* contains a factual twist not present here: the unreliable representation was an email from the creditor *contradicting* information in the creditor's own account file. *Id.* at 945. Here, Mandarich relied on the account information itself, which consistently (though incorrectly) identified the last-payment date as June 30, 2011.

Abdollahzadeh also points to our decision in *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003), but that case doesn't help him. In *Turner* we merely suggested that "an agreement [between a collector and] its creditor-clients

that debts are current" would be a "reasonable preventative measure[]" for a debt collector to take. *Id.* at 996. We've never made such an agreement a prerequisite to the bona fide error defense. Regardless, the effect of SquareTwo's general disclaimer (if any) was displaced by the affidavit Mandarich received from CACH attesting to the accuracy of its reports.

Finally, no inference of intent can be drawn from Mandarich's failure to notice that CACH's records displayed an identical balance on either side of the reported date of last payment. The law firm made a mistake—no one disputes that. Had it undertaken a more searching review of the Schedule 1 document and Account Information Report from CACH, it's possible that it would have noticed this discrepancy, notified CACH, and avoided litigation altogether. But the bona fide error defense doesn't demand perfection, and independent verification of the debt isn't a prerequisite. *Hyman*, 362 F.3d at 968.

## C. Mandarich's Procedures

The final element of the bona fide error defense requires the debt collector to show that it "maint[ains] … procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To qualify for the defense, the debt collector must have "procedures" in place, and the procedures must be "reasonably adapted" to avoid the error in question.

The Supreme Court has described "procedures" in this context as "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman*, 559 U.S. at 587. On the other hand, "a thinly specified 'policy,' allegedly barring some action but saying nothing about what action to

take," doesn't qualify. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015).

Relying on *Leeb*, Abdollahzadeh argues that Mandarich's error-prevention procedures are insufficient. But *Leeb* is distinguishable. There the debt collector simply asserted that its misleading collection letter was against company "policy," offering no evidence that it had "mechanical or other such regular orderly steps" in place for its employees to follow. *Id.* (quotation marks omitted). Under those circumstances we were unconvinced that the debt collector had any error-prevention procedures in place at all.

The Supreme Court has focused on the orderliness and regularity of the debt collector's error-prevention steps, not on the number or complexity of those steps. *Jerman*, 599 U.S. at 587. On that understanding of the defense, Mandarich's system for guarding against attempts to collect time-barred debts, while unquestionably simple, qualifies under § 1692k(c) as a regular and orderly error-prevention procedure.

And the system is reasonably adapted to avoid collecting out-of-statute debts. We've said that the reasonableness inquiry is "uniquely fact bound" and "susceptible of few broad, generally applicable rules of law." *Leeb*, 806 F.3d at 900 n.3 (quoting *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1277 (11th Cir. 2011)). Moreover, "[t]he word 'reasonable' in the [bona fide error] defense cannot be equated to 'state of the art,' which is to say, at the technological frontier." *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497–98 (7th Cir. 2007).

Our cases thus reflect a flexible, fact-specific approach to the reasonableness inquiry. In *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997), we approved a debt collector's "elaborate procedures" for avoiding FDCPA violations, including "publication of an in-house … compliance manual," debt-collection "training seminars for firm employees," and "an eight-step, highly detailed pre-litigation review process." On the other end of the spectrum, in *Ross* the defendant attempted to collect a debt that had been discharged in bankruptcy, and we were satisfied by its "understanding" that its creditor-clients would "not knowingly sell … a discharged debt" and would notify the collector if they did so. 480 F.3d at 495. The debt collector had minimal procedures in place beyond this "understanding": it relied on a computerized search "done … by another firm" and a policy of "prompt cessation of any attempt to collect a debt upon notification that it had been discharged." *Id.* at 497. That was enough for the defense.

Mandarich's procedures resemble those we approved in *Ross*. The law firm relied on account information provided by its client. The account data was subjected to an automated scrub that culled out-of-statute debts, and CACH supplied an affidavit attesting that the information in its report was correct. Finally, a Mandarich attorney examined the account to check whether a collection action would fall outside the applicable limitations period. These procedures didn't catch the mistake here, but "§ 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539. Mandarich took reasonable precautions to prevent attempts to collect time-barred debts. Its procedures were reasonably adapted to that purpose, giving it a safe

harbor for occasional unintentional missteps. The bona fide error defense applies, and summary judgment was proper.

AFFIRMED.